UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

         Plaintiff,

   v.                             Criminal No. 08-34-HA

                                       OPINION AND ORDER

MARIA SALUD-GARCIA,

         Defendant.

_____

HAGGERTY, Chief Judge:

      Defendant Maria Salud-Garcia is charged with six co-defendants for Conspiracy to

Violate the Animal Welfare Act and to Travel in Interstate Commerce in Aid of a Racketeering

Enterprise.  18 U.S.C. § 371; 7 U.S.C. § 2156(b); 18 U.S.C. § 1952.  Defendant is also charged

with participating in an Unlawful Animal Fighting Venture.  7 U.S.C. § 2156(a)(1).  Defendant

has filed Motions to Sever [76] and Dismiss [79].   The court heard oral argument on these

motions on November 3, 2008.  At oral argument, the court deferred ruling on the Motion to

1- OPINION AND ORDER

Sever until it becomes clearer which co-defendants remain for trial.  Defendant was given leave to renew this motion at a later date.

## FACTUAL BACKGROUND

The following general background was presented by the government in a related case. *See* Gov't Memo. in Response to Defendant Santiago Ornelas-Morales' Motion for Ruling on an Element of Offense Charged Under 18 U.S.C. § 1955 [133], filed in *United States v. Ornelas-Morales*, Crim. No. 08-29-HA.

Cockfighting is a game or contest of chance in which a knife, gaff or other sharp instrument is attached to the legs of gamecocks or roosters for the purpose of their fighting each other.  The fight occurs in a pit or ring surrounded by spectators.  The fights between the roosters are supervised by a referee.  The fight is ended when one rooster is dead or refuses to continue to fight.  If not killed during the fight, the losing rooster is almost always killed after the fight.  A series of cockfights conducted in a day is referred to as a derby.  A derby usually consists of dozens of individual cockfights lasting several hours depending on the number of entries.

Participants in cockfighting include: (1) a promoter, who generally makes arrangements and oversees activities at the derby; (2) handlers or pitters, who prepare and handle birds during a fight and may be the actual owner of the bird or someone paid to do the job; (3) referees, who officiate in the pit during the cockfight; (4) spectators, who attend and watch the cockfights; and (5) concession workers, who sell food and drink.

In a derby a number of entrants or cockfighters pay a predetermined entry fee to enter a preset number of roosters, usually about five per cockfighter.  The roosters are usually matched within a few ounces of each other for individual fights.  The cockfighter whose roosters win the

most fights in a derby wins the purse, which consists of all the entry fees of the derby

participants, less approximately ten percent kept by the "house" or promoter(s).  In the event of a

tie, the purse is split among the winners.  Sometimes the purse is divided among the first-place

and second-place winners.  Side bets also may occur between and among cockfighters that do

not involve the overall purse.

Aside from the gambling, the sponsor or promoter often derives profits from admission

fees and concession sales, including the sale of alcoholic beverages.  Individuals may profit from

the sale or raffle of related paraphernalia, including but not limited to: gaffs, tie cords, cages,

training equipment, medications, and veterinary supplies.

A mature gamecock resembles an ordinary rooster except it has been surgically altered,

trained, and conditioned for fighting.  Gamecocks also generally receive vitamins, drugs, and

other supplements to boost their strength and endurance.

Participants in the cockfighting covered by this indictment would bring roosters to a

derby's designated location, and other persons would come to the derby as spectators or workers.

One or more of the participants and their roosters would have traveled in interstate commerce.

Various persons would perform roles at the derby as described above, including but not limited

to: collecting admission and entry fees and bets, weighing the roosters, matching the roosters for

fights, keeping written records of the fights, selling and sharpening gaffs, and disbursing the

wagered money to the derby's winners.  One or more persons would manage and supervise the

fights in the role of a referee.  Persons would sell food and drinks at a concession stand.  The

government's evidence includes testimony from two confidential informants who wore audio and

video recording devices during cockfighting derbies.

3- OPINION AND ORDER

The above recited facts are not challenged by defendant for purposes of these motions. The indictment in this case alleges that defendant participated in a Conspiracy to Violate the Animal Welfare Act and to Travel in Interstate Commerce in Aid of a Racketeering Enterprise. Indictment at 4-5. This conspiracy is alleged to have begun in February 2006 and continued through January 12, 2008. *Id.* at 4. The indictment further alleges that on or about February 15, 2007, defendant participated in a cockfighting derby in Woodburn, Oregon. *Id.* at 9.

In defendant's Memorandum in Support of Motion to Dismiss [80], she argued that her only alleged involvement in the conspiracy was her participation in one derby as a concession worker. Defendant further contended she did not attend any cockfights, and that the government had conceded she was misidentified as one of the concession workers at the February 15, 2007, derby. However, at oral argument, defendant submitted additional facts which she stipulates as true for the purposes of the Motion to Dismiss.

The additional stipulated facts state that defendant and her husband, Benjamin Garcia, held approximately six derbies at their residence in Woodburn, Oregon. Defendant prepared food for these derbies, and she and her husband made between $8,000 and $9,000 in profit from the derbies held at their residence. Defendant was aware that some of the participants in the derbies came from Washington state. Defendant contends that while she was aware of the derbies being held on her property, she was unaware of any of the other derbies covered by this indictment. She further contends that her role was limited to preparing the food sold at the derbies held on her property and that she remained in her home during the derbies.

4- OPINION AND ORDER

**DISCUSSION**

Defendant argues that she did not know of, participate in, or depend upon the overall conspiracy, and that the charges against her should be dismissed.

Federal Rule of Criminal Procedure 12(b)(2) provides that "a party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." A district court may dismiss charges within an indictment when the facts are not disputed and there is insufficient evidence to support the charges. *United States v. Philips*, 367 F.3d 846, 855 n.25 (9th Cir. 2004). Under a motion to dismiss, a district court does not make a determination of guilt or innocence, rather, the court determines whether an indictment is sufficient to charge an offense. *United States v Sampson*, 371 U.S. 75, 78-79 (1962). Generally, dismissal is only appropriate if it involves questions of law rather than fact. *Philips,* 367 F.3d at 855 n.25. For purposes of this motion, it does not appear that the facts are disputed. However, defendant has stipulated to facts sufficient to ground liability for the conspiracy as a principal as set out in the indictment. Whether the government will be able to prove its case beyond a reasonable doubt is a question that is appropriately left to the jury. Accordingly, the Motion to Dismiss must be denied.

**<u>CONCLUSION</u>**

For the reasons provided, this court concludes that Maria Salud-Garcia's Motion to

Dismiss [79] is DENIED.

IT IS SO ORDERED.

DATED this__10___ day of November, 2008.


_____/s/ Ancer L. Haggerty____
Ancer L. Haggerty
United States District Court